FREEMAN *v.* FARMERS BANK & TRUST CO.

5-2210                                    339 S. W. 2d 427

Opinion delivered October 31, 1960.

*Gardner & Steinsiek,* for appellant.

*Reid & Burge* and *Oscar Fendler,* for appellee.

GEORGE ROSE SMITH, J.   The appellee, as trustee under the will of W. T. Kitchen, filed an annual accounting in the chancery court and asked that it be approved. This request was resisted by the appellant, a life beneficiary of the trust, who contended that the trustee had erred in charging certain mortgage payments and life insurance premiums against income rather than against principal.   This appeal is from a decree holding that the payments were properly chargeable to income. That is the only question before us.

The testator Kitchen, at his death in 1957, was the owner of all the capital stock (except two qualifying shares) in a corporation called Kitchen Farms Company. The principal assets of the corporation consisted of about 2,500 acres of farm land which the corporation had mortgaged to a life insurance company to secure a debt of $200,000. By the terms of the mortgage the corporation was required to pay the interest upon the debt and to pay $5,000 upon the principal each year.

Kitchen's will bequeathed all his stock in the corporation to the appellee, with directions that the stock be divided into three shares and be held upon three separate trusts. We are here concerned with the largest of the three trusts, as to which the will provided: "Share No. Three, consisting of fifty (50%) per cent of my stock or other interests in the Kitchen Farms Company shall be assigned to my Trustee to hold, in trust, on the following terms: The Trustee shall control and manage same and shall receive the income therefrom, and after paying the reasonable expenses of the trust, shall pay the income at least annually as long as she lives to Mrs. Tanna Freeman [the appellant]." Various remainders are to take effect at the death of the life tenant. Forty per cent of the corporate stock was left to the appellee upon a second trust, and the other ten per cent upon a third trust.

The will also contained this provision about a policy of life insurance: "I have been paying the premiums for several years on a $20,000.00 double indemnity life insurance policy on the life of Mr. Edward Reese, the farm manager of the Kitchen Farms Company, and of which I am the beneficiary. All of my rights, title and interest in this policy, I give, devise and bequeath to the Kitchen Farms Company and express the wish that the company continue to make payments of the premiums thereon."

Kitchen's widow elected to take against the will, and in settlement of her dower rights she received half the corporation's farm land in fee and assumed half

the mortgage debt. It was then decided that the trustee would effect certain tax savings by dissolving the Kitchen Farms Company and thereafter operating the farms without using a separate corporate entity. With the consent of all concerned the corporation was dissolved, after first conveying its remaining half of the farm lands to the trustee.

In the accounting now in dispute the trustee proposes to treat as current expenses both the life insurance premium payment of $757.40 and the trustee's $2,500 share of the annual principal payment upon the mortgage. Under this method of accounting the life beneficiaries of the three trusts will receive only the net income after the two disputed items and all other current expenses have been paid. The appellant insists that the premium and mortgage installment should be paid out of the principal of the trust.

If this were a run-of-the-mill case involving nothing more than a simple allocation of current and fixed expenses the appellant's position would be sound. As a general rule only the interest upon a mortgage debt is to be charged against the life beneficiary's income. The corpus of the trust normally bears the burden of fixed capital charges such as principal payments upon a mortgage debt or premiums for the purchase of a life insurance policy that will eventually be paid into the corpus of the trust. Rest., Trusts (2d), § 233, Comments e and f; Scott on Trusts (2d Ed.), §§ 233.2 and 233.3. This method of allocation may, however, be modified by the terms of the trust instrument. Scott, § 233.5.

Upon the particular facts of this case we are convinced that Kitchen did not intend for the trustee to employ the system of allocation now urged by the appellant. Kitchen saw fit to utilize a closely held corporation as a means of operating his farms. There is no direction in the will that the corporation be dissolved, nor any especial indication that Kitchen expected a dissolution. Rather the opposite, Kitchen left the corpo-

rate stock itself to his trustee and expressly authorized the trustee to retain the stock. Furthermore, the stock could conveniently be divided into shares of exactly 50%, 40%, and 10%, while a similar attempt to divide the land itself might have run into difficulties.

Thus it is fair to conclude that the testator contemplated the continued existence of the corporation. Hence he must have expected the life beneficiaries' income to arise from corporate dividends. Such dividends would not have been declared until the corporation's fixed obligations had first been paid. Fletcher on Corporations (Perm. Ed.), § 5340. If the corporation had not been dissolved the life beneficiaries would have had no claim to any corporate earnings not distributed as dividends. Rest., Trusts (2d), § 236, Comment y.

We have not overlooked two New York cases holding that in a somewhat similar situation the life beneficiary should not be charged with principal payments upon a mortgage. *In re Adler's Estate,* 164 Misc. 544, 299 N. Y. S. 542; *In re McLaughlin's Estate,* 164 Misc. 539, 299 N. Y. S. 559. But the court's decision in those companion cases was based upon a statute which was construed to contain an absolute prohibition against paying the mortgage debt from current income. McKinney's Consol. Laws of N. Y., Personal Property Law, § 16. Hence the settlor's intention was immaterial, as he was powerless to direct that the mortgage be paid out of income. We have no similar statute.

In the circumstances of this case we are convinced that Kitchen expected the corporation to continue in being and intended for the two charges now in controversy to be paid out of the farm profits before the declaration of dividends. There is no sound basis for holding that the testator's intention should be defeated by a corporate dissolution that resulted only from a desire to save taxes for all concerned.

Affirmed.